UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HERBERT and DORIS STEELE, ERIC CHAVEZ, ALEXANDRA DIAZ, and SONIA TORRES, on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GE MONEY BANK, a federal savings bank, WMC MORTGAGE CORPORATION and WMC MORTGAGE, LLC,<br><br>Defendants. | Case No. 08 CV 1880 PH<br><br>JUDGE BLANCHE M. MANNING<br><br>MAGISTRATE JUDGE MARTIN C. ASHMAN |

**GE MONEY BANK'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(B)(6), OR, IN THE ALTERNATIVE, TO STRIKE CERTAIN ALLEGATIONS PURSUANT TO RULE 12(F)**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1
II. THE AMENDED COMPLAINT AND BACKGROUND................................... 3
III. THE COURT SHOULD GRANT GEMB'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS AS TO GEMB ................................................................... 5
    A. Standard on a Motion to Dismiss.............................................................. 5
    B. Plaintiffs Herbert and Doris Steele, Chavez and Torres Have No Standing to Assert Any Claims Against GEMB........................................ 6
    C. Plaintiff Diaz Does Not Have Standing Against GEMB to Assert a Claim Based Upon a Yield Spread Premium............................................ 7
    D. The Amended Complaint's Vague References to "Other Discretionary Fees" Do Not Create a Plausible Theory of Recovery and All of Diaz's Claims Must Be Dismissed ......................................... 7
        1. Plaintiffs Fail to Allege Any Connection Between the Broker Fees Allegedly Paid by Diaz and GEMB ......................... 8
        2. Because Diaz's Broker Fees are Unrelated to GEMB, Plaintiffs Have Failed to Allege a Cognizable Practice or Policy Upon Which a Disparate Impact Claim May Be Based................................................................................................ 9
        3. Plaintiffs Fail to Allege That the Administrative Fee Purportedly Imposed by GEMB Was Imposed Pursuant to the "Discretionary Pricing Policy"............................................... 12
    E. In the Alternative, the Court Should Strike Plaintiffs' Class Allegations With Respect to GEMB Pursuant to Rule 12(f) ................... 13
IV. CONCLUSION.................................................................................................. 13

## TABLE OF AUTHORITIES

Page

### CASES

*AFSCME v. State of Wash.*,
    770 F.2d 1401 (9th Cir. 1985) ............................................................................. 12

*Beard v. Whitley County REMC*,
    840 F.2d 405 (7th Cir. 1998) ............................................................................... 12

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) .............................................................................. 2, 5, 10

*Bennett v. Roberts*,
    295 F.3d 687 (7th Cir. 2002) ................................................................................. 9

*Disability Rights Wis., Inc. v. Walworth County Bd. of Supervisors*,
    522 F.3d 796 (7th Cir. 2008) ................................................................................. 6

*EEOC v. Concentra Health Services, Inc.*,
    496 F.3d 773 (7th Cir. 2007) ................................................................................. 5

*EEOC v. Honda of Am., Mfg., Inc.*,
    No. 2:06-cv-00233, 2007 WL 1541364 (S.D. Ohio May 23, 2007) ..................... 9

*Farrell v. Butler University*,
    421 F.3d 609 (7th Cir. 2005) ................................................................................. 9

*Fulcher v. City of Wichita*,
    445 F. Supp. 2d 1271 (D. Kan. 2006) ................................................................... 9

*Heller Financial, Inc. v. Midwhey Powder Co.*,
    883 F.2d 1286 (7th Cir. 1989) ............................................................................. 13

*Johnson v. Uncle Ben's, Inc.*,
    965 F.2d 1363 (5th Cir. 1992) ............................................................................. 11

*Kulkarni v. City University of New York*,
    No. 01 Civ. 10628, 2002 WL 1315596 (S.D.N.Y. June 14, 2002) ..................... 10

*Quincy Mall, Inc. v. Parisian, Inc.*,
    27 Fed. Appx. 631, 636 (7th Cir. 2002) ................................................................ 5

## TABLE OF AUTHORITIES
(continued)

Page

*Raines v. Byrd*,
  521 U.S. 811 (1997) .................................................................................................6, 7

*Richardson, Jr. v. Rush-Presbyterian-St. Luke's Med. Center*,
  No. 99 C 7540, 2002 WL 461695 (N.D. Ill. Mar. 26, 2002) ......................................6

*Segal v. Geisha NYC LLC*,
  517 F.3d 501 (7th Cir. 2008) ........................................................................................5

*Smith v. City of Jackson, Miss.*,
  544 U.S. 228 (2005) ................................................................................................9, 11

*Syverson v. Int'l Bus. Machs. Corp.*,
  No. C-03-04529 *RMW*, 2007 WL 2904252 (N.D. Cal. Oct. 3, 2007) ....................10

*Village of Bellwood v. Dwivedi*,
  895 F.2d 1521 (7th Cir. 1990) ....................................................................................11

*Villarias v. State of Ill., Dept. of Mental Health*,
  No. 92 C 8420, 1995 WL 480897 (N.D. Ill. Aug. 8, 1995) ........................................9

*Watson v. Fort Worth Bank & Trust*,
  487 U.S. 977 (1987) .....................................................................................................12

### STATUTES AND REGULATIONS

12 U.S.C. § 2603 ....................................................................................................................4

24 C.F.R. § 3500.8 ................................................................................................................4

24 C.F.R. pt. 3500, App. A ..............................................................................................4, 8

24 C.F.R. pt. 3500, App. B ..............................................................................................4, 8

### MISCELLANEOUS

HUD, Statement of Policy 1999-1 Regarding Lender Payments to Mortgage
  Brokers, 64 Fed. Reg. 10,080 (March 1, 1999) ..........................................................3

Interagency Fair Lending Procedures (Aug. 19, 2004) ....................................................11

Defendant GE Money Bank ("GEMB") hereby submits its Memorandum in Support of its Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6), or, in the Alternative, to Strike Certain Allegations Pursuant to Fed. R. Civ. P. 12(f). For the reasons set forth below, the motion should be granted.

## I. **INTRODUCTION**

GEMB hereby joins in the motion to dismiss for failure to state a claim filed by WMC Mortgage, LLC ("WMC"), with the logic applying to the claims against WMC equally applying to the claims against GEMB. Additionally, as discussed below, GEMB moves to dismiss both of the claims against it for reasons pertinent only to GEMB pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, to strike Plaintiffs' class allegations as to GEMB pursuant to Fed. R. Civ. P. 12(f).

Plaintiffs' Amended Complaint attacks the so-called "Discretionary Pricing Policy" that the two defendants allegedly maintained. Under the Discretionary Pricing Policy, the defendants allegedly gave mortgage brokers the ability to set the interest rate of a loan above a floor interest rate and thereby earn compensation from the defendants. Such payments are known as "yield spread premiums" ("YSPs") and are disclosed on HUD-1 filings. Plaintiffs allege that having such a pricing policy has resulted in a disparate impact against minorities such as themselves because allowing brokers to set rates purportedly results in higher rates being charged to minorities. Whatever the merit of this argument, it is moot against GEMB. There is no allegation that any borrower in this case has a loan from GEMB with a YSP. Simply put, the gravamen of the Amended Complaint does not apply to GEMB, which is not often mentioned in any event,

and the case should be dismissed under the most basic of concepts – lack of injury and standing to sue for the alleged harmful conduct.

Below GEMB also addresses an argument that plaintiffs may make that the Amended Complaint is salvageable because it also refers to "other discretionary fees." While the Amended Complaint mentions three fees appearing on Ms. Diaz's HUD-1 statement, it never connects them to the "Discriminatory Pricing Policy" or offers any explanation of how these fees had any connection to the pricing of the interest rate Ms. Diaz received. There are two payments from Ms. Diaz directly to her mortgage broker Bridgeline Capital, Inc. ("Bridgeline"), *not GEMB,* as to which GEMB did not charge, receive, or otherwise reap any benefit whatsoever, and as to which there is no allegation that GEMB had any role in setting the amount of these fees whatsoever. Moreover, these fees are not alleged to have anything to do with GEMB's pricing of the rate charged Ms. Diaz. The third fee mentioned in the Amended Complaint is a processing fee directly charged by GEMB, but there is no allegation that the broker had anything to do with setting that fee or was otherwise granted any discretion. Ms. Diaz must allege facts that if true show a plausible theory of recovery. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). All she has done is coined a term, the "Discretionary Pricing Policy," and mentioned three fees found on her HUD-1 without any connection between them. Therefore, Ms. Diaz has failed to allege facts plausibly showing that GEMB should be held responsible for Bridgeline's fees.

Finally, the class allegations against GEMB should be stricken pursuant to Fed. R. Civ. P. 12(f). The Amended Complaint seeks certification of a class of minority borrowers who obtained a "WMC home mortgage loan." As noted above, there is no

2

basis alleged to hold GEMB responsible for loans issued by WMC and no basis upon which to certify such a class against GEMB.

GEMB thus respectfully requests that the Court grant its motion to dismiss.

## II. THE AMENDED COMPLAINT AND BACKGROUND

Plaintiffs Herbert and Doris Steele, Eric Chavez, Alexandra Diaz, and Sonia Torres (collectively, "Plaintiffs") purport to represent a nationwide class of minority consumers "who obtained a WMC home mortgage loan" and who allegedly "paid discretionary points, fees or interest rate mark-ups in connection with their loan." (Am. Compl. ¶ 99.) Plaintiffs claim that GEMB and WMC have a so-called "Discretionary Pricing Policy" that "allows" mortgage brokers to charge a "subjective surcharge of additional points and fees," (*id.*, ¶ 2), and that this alleged "policy" has a disparate impact on minority borrowers in violation of the Equal Credit Opportunity Act ("ECOA") and Fair Housing Act ("FHA") (*id.*, ¶¶ 45-47). Plaintiffs further allege, in wholly conclusory fashion, that "Defendants have collected more in finance charges from minority borrowers than from similarly situated white persons" because of the purported "Discretionary Pricing Policy." (*Id.*, ¶¶ 111 & 117.)

Plaintiffs describe a YSP as a "subjective" or "discretionary" payment to a mortgage broker. (*E.g.*, *id.*, ¶¶ 35, 44.) The Department of Housing and Urban Development ("HUD") describes a YSP as a form of indirect mortgage broker compensation whereby a mortgage lender will pay a mortgage broker a fee when a loan placed with the lender is above its "par rate" of interest. HUD, Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed. Reg. 10,080, 10,081 (March 1, 1999). According to the Amended Complaint, the "par rate" allegedly is the

3

lowest rate at which a lender will accept a loan from a broker for an applicant of a particular creditworthiness. (Am. Compl. ¶ 42.) A YSP, in effect, raises the contract rate of interest on a mortgage loan. Plaintiffs allege that "Defendants share in additional income generated by the premium because the yield spread premium-affected borrower is locked into a higher interest rate going forward on their GEMB or WMC loan than they would be if they had been placed in a par rate loan without a yield spread premium." (*Id.*, ¶ 44.) Plaintiffs further allege that "Defendants' authorized brokers and correspondents receive more compensation from Defendants when they steer their clients into loans with higher interest rates, and less compensation when they place their clients into loans with lower interest rates." (*Id.*, ¶ 32.)

Plaintiff Diaz, together with non-party Mari Diaz, allegedly has a mortgage loan originated by GEMB. (*Id.*, ¶¶ 74 & Ex. 4.) The other Plaintiffs have loans originated by WMC – and no alleged connection to GEMB. (*Id.*, ¶¶ 55, 65 & 83.) Ms. Diaz does not allege that her loan has a YSP. (*Id.*, ¶ 75.) Rather, she allegedly paid a $4,990 origination fee and a $995 processing fee to Bridgeline, her broker, in connection with her mortgage loan of $522,000, and she does not allege that such fees (or any other practice) resulted in an increase in her loan's contract interest rate.[1] (*Id.*) Plaintiff Diaz's HUD-1 settlement statement,[2] which is attached to the Amended Complaint,

---

[1] Diaz also alleges that she paid a $950 administrative fee that was <u>not</u> imposed by Bridgeline, Diaz's broker. As discussed in Part III.D.3, *infra*, Diaz fails to allege facts plausibly indicating that this fee is discretionary in any way.

[2] A HUD-1 settlement statement is a disclosure required by the Real Estate Settlement Procedures Act. It sets forth all costs imposed on the borrower and all costs imposed on the seller of real estate in connection with the settlement of a mortgage loan. *See* 12 U.S.C. § 2603; 24 C.F.R. § 3500.8. Both direct broker origination fees and YSPs are indicated on the HUD-1. Direct broker origination fees should be reflected in lines 808 to 811 of the HUD-1 and included in the items to be paid by the borrower at settlement. 24 C.F.R. pt. 3500, App. A ("Line Item Instructions"). YSPs are reflected in the same lines, but should be

similarly reflects that she paid the origination and processing fees to Bridgeline, and not a YSP. (*Id.*, Ex. 4.) Plaintiff Diaz alleges that Bridgeline knew that she was a minority borrower, (*id.*, ¶ 77), and that she was charged "a disproportionately greater amount in non-risk-related credit charges" than similarly situated non-minority borrowers, (*id.*, ¶ 81). The Amended Complaint provides no factual allegations to support that conclusion.

### III. THE COURT SHOULD GRANT GEMB'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS AS TO GEMB

#### A. Standard on a Motion to Dismiss

Plaintiffs' Amended Complaint must be dismissed if it fails to provide grounds that, if true, would establish their entitlement to relief. *Twombly*, 127 S. Ct. at 1965. A plaintiff may not rely on conclusory labels, but rather must allege "enough facts to state a claim to relief that is plausible on its face." *Segal v. Geisha NYC LLC*, 517 F.3d 501, 504 (7th Cir. 2008) (quoting *Twombly*). "[I]t is not enough for a complaint *to avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief . . . ." *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (emphasis in original). Moreover, a court may consider "matters of public record outside the pleadings" in evaluating a Rule 12(b)(6) motion. *Quincy Mall, Inc. v. Parisian, Inc.*, 27 Fed. Appx. 631, 636 (7th Cir. 2002) (citing *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994)).

---

marked "P.O.C." (paid outside of closing), and excluded from the money due from the borrower at closing. *See* 24 C.F.R. pt. 3500, App. A ("General Instructions"); 24 C.F.R. pt. 3500, App. B, item 13.

### B. Plaintiffs Herbert and Doris Steele, Chavez and Torres Have No Standing to Assert Any Claims Against GEMB

The Amended Complaint alleges that the mortgage loans made to Herbert and Doris Steele, Mr. Chavez, and Ms. Torres were originated by WMC Mortgage Corporation (collectively, "WMC loans"). (Am. Compl. ¶¶ 55, 65 & 83.) Nonetheless, Plaintiffs conclusorily assert that "Defendants" (*i.e.*, GEMB as well as WMC) violated the ECOA and FHA in connection with the WMC loans to these plaintiffs. (*E.g.*, *id.*, ¶¶ 63, 72, 90, 111 & 117.) That assertion, however, is inconsistent with Plaintiffs' factual allegation – and the incontrovertible fact – that WMC, not GEMB, originated the WMC loans, and Plaintiffs fail to allege that GEMB had any involvement whatsoever regarding the pricing of the WMC loans. Accordingly, Plaintiffs Herbert and Doris Steele, Mr. Chavez, and Ms. Torres have no claim against GEMB and no standing to sue GEMB. Thus, their claims must be dismissed as to GEMB. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("To meet the standing requirements of Article III, a plaintiff must allege personal injury *fairly traceable to the defendant's allegedly unlawful conduct* and likely to be redressed by the requested relief.") (Internal quotation and citation omitted; emphasis removed from original; additional emphasis added); *see also Disability Rights Wis., Inc. v. Walworth County Bd. of Supervisors*, 522 F.3d 796, 800 (7th Cir. 2008) ("The standing requirements under Article III of the Constitution are well settled: injury in fact, a causal connection between the injury *and the defendant's conduct*, and likely redressability through a favorable decision.") (internal quotation omitted and emphasis added); *see also Richardson, Jr. v. Rush-Presbyterian-St. Luke's Med. Ctr.*, No. 99 C 7540, 2002 WL 461695, at *15 (N.D. Ill. Mar. 26, 2002) (dismissing a Title VII disparate

6

impact claim because the plaintiff failed to show that that he, himself, was injured by the defendants).

### C. Plaintiff Diaz Does Not Have Standing Against GEMB to Assert a Claim Based Upon a Yield Spread Premium

As explained above, the gravamen of the Amended Complaint is that YSPs lead to disparate impact on minorities. However, Plaintiff Diaz, the only Plaintiff with a GEMB-originated loan, does not and cannot allege that she incurred a YSP in connection with her loan. (Am. Compl. ¶ 75.) Thus, no Plaintiff in this case has been injured by any YSP program GEMB may have allegedly had, and no Plaintiff has standing to challenge any YSP program GEMB may have allegedly had. *Raines*, 521 U.S. at 818. Therefore, the Court should dismiss any allegations in the Amended Complaint regarding YSPs as to GEMB.

### D. The Amended Complaint's Vague References to "Other Discretionary Fees" Do Not Create a Plausible Theory of Recovery and All of Diaz's Claims Must Be Dismissed

Plaintiffs' ECOA and FHA claims are premised on the theory that "[a]s a result of the Defendants' Discretionary Pricing Policy, the Defendants have collected more in finance charges from minority borrowers than from similarly situated white persons . . . ." (Am. Compl. ¶¶ 111 & 117.) Thus, under Diaz's own theory, she must show that her broker was granted discretion that caused GEMB to collect more in finance charges from Diaz than from similarly situated non-minority borrowers. As noted above, the Amended Complaint alleges no YSP in connection with Plaintiff Diaz's loan, and the Amended Complaint references three "other discretionary fees" *none of which* fit within Diaz' theory of her case. Two of those fees – a $4,990 origination fee and a $995

processing fee – were paid to her broker and are not alleged to have resulted in GEMB collecting more money from Ms. Diaz in any way. Indeed, the Amended Complaint does not allege that there was any connection whatsoever between these fees and the amount GEMB charged or received in connection with the Diaz loan or that GEMB otherwise benefited from these fees. The third, an administrative fee charged by GEMB, is not alleged to have been set by the broker (nor could it be), as discussed further below. Simply put, whatever theory Plaintiffs attempt to spin concerning YSPs, there are no other fees identified that fit within their theory.

    1.    Plaintiffs Fail to Allege Any Connection Between the Broker Fees Allegedly Paid by Diaz and GEMB

Although Plaintiffs conclusorily assert that "Defendants" imposed the broker fees at issue (*id.*, ¶ 81), Plaintiffs' allegations make clear that Bridgeline, not GEMB, imposed the broker fees. For instance, the paragraph of the Amended Complaint actually discussing Plaintiff Diaz's fees alleges that "Diaz paid a $4,990 origination fee and a $995 processing fee *to her broker, Bridgeline Capital* . . . ." (*Id.*, ¶ 75 (emphasis added).) Similarly, Plaintiff Diaz's HUD-1 settlement statement, which is attached to the Amended Complaint and is therefore properly considered on this motion, reveals that Bridgeline – rather than GEMB – imposed these fees. Plaintiff Diaz's broker origination and processing fees are listed in the HUD-1 lines for fees due to a mortgage broker, and included in the money due from the borrower at closing.[3] (*See id.*, Ex 4; 24 C.F.R. pt. 3500, App. A.) Plaintiff Diaz alleges that those fees were imposed pursuant

---

[3] This contrasts with a YSP, which should be disclosed on the HUD-1, but marked "P.O.C." (paid outside of closing), and excluded from the money due from the borrower at closing. *See* 24 C.F.R. pt. 3500, App. A; 24 C.F.R. pt. 3500, App. B, item 13. No such YSP is disclosed on Plaintiff Diaz's HUD-1.

8

to her relationship with her broker, Bridgeline (Am. Compl. ¶¶ 74-75), which is distinct from her relationship with GEMB. Those fees were not paid to GEMB and there are no allegations that they were somehow compensated for GEMB receiving anything above any kind of "par" rate of interest or otherwise benefit GEMB, let alone that GEMB granted the broker discretion to set GEMB's price.

    2.    Because Diaz's Broker Fees are Unrelated to GEMB, Plaintiffs Have Failed to Allege a Cognizable Practice or Policy Upon Which a Disparate Impact Claim May Be Based

The failure to plead facts that would connect these particular broker fees to a GEMB practice of granting discretion to a broker to set GEMB's pricing is fatal. To state a disparate impact claim, Plaintiffs must plead facts, *inter alia*: (1) showing the existence of a purported disparate impact on a protected group; (2) identifying a specific practice or policy adopted by defendant; and (3) showing a causal connection between the specific challenged practice or policy and the alleged disparate impact. *See Bennett v. Roberts*, 295 F.3d 687, 698 (7th Cir. 2002). In particular, Plaintiff Diaz must "isolat[e] and identify[] the *specific* [] practices that are allegedly responsible for any observed statistical disparities . . . ." *EEOC v. Honda of Am., Mfg., Inc.*, No. 2:06-cv-00233, 2007 WL 1541364, at *4 (S.D. Ohio May 23, 2007) (emphasis in the original and internal quotation omitted).[4] "It is not enough for an employee to point to a generalized policy that leads to a disparate impact." *Fulcher v. City of Wichita*, 445 F. Supp. 2d 1271,

---

[4] *See also Farrell v. Butler University*, 421 F.3d 609, 616 (7th Cir. 2005) ("The plaintiff must first isolate and identify the specific employment practices that are allegedly responsible for any observed statistical disparities . . . ."); *Villarias v. State of Ill., Dept. of Mental Health*, No. 92 C 8420, 1995 WL 480897, at *6 (N.D. Ill. Aug. 8, 1995) ("To state a prima facie case, a plaintiff must identify a specific employment practice responsible for substantial statistical disparities properly identified in the workforce.") (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1987)).

1276-77 (D. Kan. 2006) (citing *Smith v. City of Jackson, Mississippi*, 544 U.S. 228 (2005)). "Simply gesturing towards the [] process as a whole will not satisfy the requirement that the plaintiff identify a specific employment practice that is the cause of the disparate impact." *Kulkarni v. City University of New York*, No. 01 Civ. 10628, 2002 WL 1315596, at *1 (S.D.N.Y. June 14, 2002). Diaz fails to identify a specific practice or policy, but rather vaguely contends that Diaz's fees are "discretionary." That contention is far too vague and fails to identify a specific practice or policy, as required, for three reasons.

First, Plaintiff Diaz has set forth no factual allegations and relies on conclusory statements that "other" fees apart from YSPs are "discretionary," which is insufficient to meet her burden in pleading a specific practice or policy. *E.g., Twombly*, 127 S. Ct. at 1967 (requiring factual allegations of an agreement among defendants rather than a conclusory statement that such an agreement was reached; and finding that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."). Indeed, because *Bennett, Fulcher*, and *Kulkarni* were decided prior to *Twombly,* Diaz's burden for pleading the elements of a disparate impact claim is even higher than indicated by those cases. Diaz's vague assertions of "discretion" fall well short of factual allegations plausibly indicating the existence of a specific practice or policy, and thus fail to state a claim.

Second, merely affixing the label "discretionary" or "subjective" to Diaz's fees does not meet the requirement to identify a specific policy because the mere existence of subjectivity is not a specific policy. *See Syverson v. Int'l Bus. Machs. Corp.*, No. C-03-04529 RMW, 2007 WL 2904252, at *6 (N.D. Cal. Oct. 3, 2007) (finding the plaintiffs'

asserted policy involving "the subjective use of procedures and criteria for implementing the group termination" was "vague and conclusory" and failed to state a claim).[5] Accordingly, vague assertions that the fees paid by Plaintiff Diaz to Bridgeline were "discretionary fees" utterly fail to establish the requisite policy.[6]

Finally, Plaintiffs in essence are asserting that the fees set by Bridgeline are "discretionary" to the extent that GEMB took no action to prevent an independent party from charging such fees to its client. However, having no involvement with the amounts that a third party charges its client does not amount to a practice upon which a disparate impact claim can be based because such an alleged lack of action is the antithesis of a specific policy.[7] The instant case is thus unlike the typical employment

---

[5] *See also Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1369 (5th Cir. 1992) (dismissing a disparate impact claim because "[a]n employer's policy of leaving promotion decisions to the unchecked discretion of lower level supervisors should itself raise no inference of discriminatory conduct.") (citing *Watson*, 487 U.S. at 978).

[6] Indeed, federal regulatory guidance also indicates that the mere absence of measures preventing alleged discrimination by independent third parties is not a cognizable "policy" for disparate impact purposes, and, in any event, disparate impact analysis does not apply to the exercise of credit pricing discretion. Expert federal agencies primarily responsible for enforcing the ECOA and FHA for depository institutions (including the Office of Thrift Supervision, GEMB's primary regulator), instruct their specialized fair lending examiners to analyze potential discrimination stemming from the discretion of a lender's employees using a disparate treatment analysis, rather than a disparate impact analysis. Interagency Fair Lending Procedures, at 26-27 (Aug. 19, 2004) ("[A] lender's policies of allowing employees to exercise discretion and to negotiate terms or conditions of credit can better be described as the **absence** of policies or criteria than as a situation in which a policy or criterion generates a disproportionate adverse impact. . . . [E]xaminers should focus on possible disparate **treatment**.") (bolding in original), *available at* www.ffiec.gov/pdf/fairlend.pdf. Pricing discretion by third parties is no different. *See Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1533 (7th Cir. 1990) ("Some practices lend themselves to the disparate impact method, others not.").

[7] *Cf. Smith v. City of Jackson, Miss.*, 544 U.S. 228, 239 (2005) ("[P]etitioners have done little more than point out that the pay plan at issue is relatively less generous to older workers than to younger workers. They have not identified any specific test, [and] . . . it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact.").

11

disparate impact case, which involves an allegedly facially neutral policy that is implemented by employees of the defendant. *See, e.g., Watson*, 487 U.S. at 982.[8]

        3.    Plaintiffs Fail to Allege That the Administrative Fee Purportedly Imposed by GEMB Was Imposed Pursuant to the "Discretionary Pricing Policy"

As to the administrative fee allegedly paid to GEMB (*see* Am. Compl. ¶ 75), there are no allegations that Bridgeline, Diaz's broker, set this amount. Consequently, this fee does not comport with Plaintiffs' alleged "Discretionary Pricing Policy" because that policy is premised on GEMB allegedly allowing *mortgage brokers* to charge discretionary fees that had a disparate impact. Because Plaintiffs allege this fee was imposed by GEMB, (*id.*, Ex. 4), rather than Bridgeline, it is not a discretionary fee upon which Plaintiffs' claims are based. Furthermore, the Amended Complaint alleges that GEMB's own rates were set in a non-discriminatory manner. (*Id.*, ¶ 41.) Accordingly, the Amended Complaint alleges no basis whatsoever to support a claim that this administrative fee imposed by GEMB was discriminatory in any respect, and Diaz's claim with respect to that fee must also be dismissed.

---

[8] Likewise, courts have been unwilling to allow plaintiffs to premise a disparate impact claim on conduct that is nothing more than allowing market forces to determine appropriate employment compensation. *Beard v. Whitley County REMC*, 840 F.2d 405, 407 (7th Cir. 1998) (affirming district court finding that defendant's "reliance on the market to set its wage rates is not the sort of policy at which disparate impact analysis is aimed.") (internal quotation omitted); *see also AFSCME v. State of Wash.*, 770 F.2d 1401, 1406 (9th Cir. 1985) ("A compensation system that is responsive to supply and demand and other market forces is not the type of specific, clearly delineated employment policy contemplated by *Dothard* and *Griggs*; such a compensation system, the result of a complex of market forces, does not constitute a single practice that suffices to support a claim under disparate impact theory."). Allowing the market between the borrower and mortgage broker to operate without GEMB's involvement cannot be the basis of a disparate impact claim.

### E. In the Alternative, the Court Should Strike Plaintiffs' Class Allegations With Respect to GEMB Pursuant to Rule 12(f)

Finally, Plaintiffs' class allegations (*id.*, ¶¶ 100-06) should be struck with respect to GEMB if the Amended Complaint is not dismissed as to GEMB. Plaintiffs specifically seek to certify a class of minority borrowers "who obtained a *WMC* home mortgage loan" (*id.*, ¶ 99 (emphasis added)), not minority borrowers who obtained a GEMB loan. Plaintiff Diaz thus is not a member of the putative class and, as discussed in Part III.B, *supra*, there is no legal basis to hold GEMB responsible for loans made by WMC. Therefore, there is no basis upon which to certify a class against GEMB, and these allegations should be struck pursuant to Fed. R. Civ. P. 12(f). *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant, immaterial . . . matter."); *see also Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (granting motion to strike where it would "remove unnecessary clutter from the case," and "serve to expedite" proceedings).

### IV. CONCLUSION

For the foregoing reasons, GEMB respectfully requests that the Court grant its motion to dismiss for failure to state a claim, or, in the alternative, strike certain allegations as to GEMB.

July 11, 2008                                  Respectfully submitted,

                                                    GE MONEY BANK

                                                  By:     s/ Kristen Werries Collier
                                                           One of its Attorneys

Eric N. Macey
Kristen Werries Collier
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

Richard A. Rothman
John P. Mastando III (pro hac vice application pending)
Walter E. Zalenski (pro hac vice application pending)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

## CERTIFICATE OF SERVICE

Kristen Werries Collier, an attorney, hereby certifies that, on July 11, 2008, she caused a true and correct copy of the foregoing GE Money Bank's Memorandum in Support of Its Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6), or, in the Alternative, to Strike Certain Allegations Pursuant to Rule 12(f), to be filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to receive electronic filings as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                                                                                             s/ Kristen Werries Collier